ELLA M. LANGHANS, petitioner,

*v.*

HENRY FREDERICK LANGHANS, defendant.

[Decided February 21st, 1923.   Opinion filed March 5th, 1923.]

Where in a case of divorce on the ground of adultery, the un-corroborated proof offered was by an expert in handwriting who testified that a certain signature in a hotel register was in the hand-writing of the defendant, this evidence standing alone is not suffi-cient to sustain a decree for divorce against the emphatic denial of the defendant.

*Messrs. Leavitt & Ulbrich,* for the petitioner.

*Mr. Edward Stover,* for the defendant.

BENTLEY, V. C.

Having disposed of this case, except as to the proof of handwriting, I shall not recite the facts more than may be necessary to render this memorandum intelligible.

The petition for divorce makes two charges of adultery against the defendant, the one under consideration being based upon a comparison of handwriting in the register of the Hotel Bellevue-Stratford, at Philadelphia, under date of March 28th, 1916. The defendant is an inmate of the state's prison, convicted of the crime of embezzlement, and since he has been there the petitioner has learned facts that led her to believe that he had previously committed the adul-teries mentioned above and, I think, promptly commenced this suit.  Counsel for the defendant has argued very earn-estly that she was guilty of laches, but I think not, for the reason that she explains that shortly after an interview with one of his former employers, which was very damaging to the defendant, she employed counsel and, to come down to the

charge in question, did not learn until last summer of his alleged registration in the hotel mentioned, whereupon she promptly filed a supplemental petition.

She did not in any way indicate the manner in which this information was conveyed to her, so that the proofs as they stand in this regard are lacking whatever corroboration might have been given by a showing of the apparent reliability of the source of her information. The sole proof of his adultery in Philadelphia, if such it may be termed, is an entry as referred to above. On the date aforesaid somebody wrote in the register of that hotel the following words and letters :

"Kendall I Daly & wife Buffalo N. Y."

and in the appropriate space, which is always filled in by the hotel clerk, the number "703" appears, it apparently being the room assigned to the party who made such entry.

There was produced in behalf of the petitioner an expert on disputed documents, Loren C. Horten, who had previously made a very careful examination of this handwriting, in comparison with a large number of undoubted standards, proved not only by the petitioner but admitted by the defendant to have been specimens of his handwriting. Among the evidences of the identity of the writer of the disputed entry, and the standards being one and the same person, the expert pointed out that invariably and without exception wherever the character "I" appeared in the standards it was indentical in type and form with that in the hotel register. Similarly, the capital letter "K" was distinctive throughout the standards, and in every place a replica of that of the disputed entry. In the word "Buffalo," in the register, one of the "f's" is peculiar, in that the loop below the line is practically an old-fashioned "f," such as in ancient printings makes the modern reader almost pronounce it as an "s." Just so in the standard specimens, time after time the old-fashioned "f" appears, sometimes being complete and sometimes as in the disputed signature on the border line between the old-fashioned and the new.

So on, a large number of comparisons were made and each one was very persuasive that the disputed handwriting was that of the defendant. Perhaps even more convincing were the specimens of his handwriting made by the defendant upon the stand. He was required to write the words "Kendall I. Daly & wife, Buffalo, N. Y.," seven or eight different times, and it seems to me unescapable that he consciously tried to change his handwriting as far as he could from the disputed signature without making it too unlike his writings in the standards.

In passing it should be noted that this man described himself as an accountant and has had a long and wide experience as a bookkeeper and in other clerical work that would render him very expert in the use of pen and ink. So much so, in fact, that difficulty was experienced in securing a pen with which he could write with any facility. In the specimens of his handwriting made upon the witness-stand, when he came to the initials "N. Y.," in order, I believe, to differentiate from the disputed writing, he stopped and removed his pen from the paper upon the completion of the letter "N" and placed a period thereafter before resuming the initial "Y;" after which he again removed his pen from the paper and placed the appropriate period thereafter.

Not only the entry in the hotel register but in every instance in his innumerable writings that have been put in evidence I find that where he used the abbreviation "N. J." he completed both letters with one continuous motion of the pen and did not remove the same from the paper until after the completion of the letter "J," and then, as in the hotel register, placed the period after each letter.

That there is a startling similarity in his acknowledged handwriting and the disputed entry is unescapable. I am gravely suspicious that it was he who made such entry; but my difficulty is whether or not such proof will convict the defendant of adultery. It must be borne in mind that the issue with which I must deal is the single, naked fact of adultery upon the part of the defendant. It seems to me that to advise a decree for the petitioner in this case would

be a most dangerous precedent. This is not such a case as where there is direct, credible proof of the presence of the defendant and a woman not his wife at a hotel under such circumstances as to make one believe that they registered there as man and wife. There is not, outside of this writing, a suggestion that the defendant was at the Bellevue-Stratford or, in fact, in the city of Philadelphia or the State of Pennsylvania on the 28th day of March, 1916. There is not a scintilla of evidence, or an intimation other than the entry in the register, that he was with any woman other than his wife on that day in the city of Philadelphia or elsewhere. There is not an iota of evidence as to the identity of the woman or of any other woman with whom he had any illicit relations other than the testimony of Dr. Brown, with whose credibility I have already dealt. From all that appears in the proofs in this case, some time during the latter part of 1922 an examination of the register was made, and more than six years before there was discovered a specimen of writing that bore a strong resemblance to that of the defendant. It is clear that if a sufficient number of hotel registers should be examined by an expert it is almost a mathematical certainty that in some one of the millions of entries that have been made, as close an approximation of the handwriting of any individual could be found as the approximation between the entry in question and the handwriting of the defendant.

Thus the entire testimony to prove this adultery rests upon the uncorroborated opinion only of a handwriting expert. He frankly confessed on cross-examination that his testimony only was intended to express his individual opinion, and he was equally honest in admitting that he might be mistaken. I am not unmindful of the distinction between the *quantum* of proof necessary in a divorce suit and that essential to a conviction under an indictment for adultery; but even so, I am not prepared to decide that an expert opinion in the matter of handwriting, uncorroborated, is sufficient to sustain the burden of a fair preponderance of the evidence against the most emphatic denial of the defendant, unshaken

on cross-examination, even though his testimony is subject to the scrutiny always to be given to the story of a convict.

My difficulty with the proofs in this case is that the testimony of the expert witness, while it might be of very great moment in corroboration of other testimony, is not sufficient of itself to discharge the burden upon the petitioner. For example, in the typical case where a witness in a divorce suit swears to the presence of the defendant and a woman not his wife at a hotel, and in corroboration thereof a register is placed in evidence alleged to contain an entry made by the defendant, it would be of the utmost assistance to the court to have a trained expert point out the similar traits in the handwriting of such entry, as compared with the acknowledged or proven handwriting of the defendant. If there had been any testimony in this case to prove the presence of the defendant in the hotel in question, and if there had been some evidence of his being accompanied at that time by some woman then, as I have before intimated, there would be great weight to the testimony of Mr. Horten; but in the absence of any such proof his testimony is insufficient to prove the charge.

I will advise a decree dismissing the petition, without costs.